THE PEOPLE OF THE STATE OF NEW YORK, APPELLANTS, v. WILLIAM C. KINGSLEY AND OTHERS, RESPONDENTS.

8h 233
55ad471

THE PEOPLE OF THE STATE OF NEW YORK, APPELLANTS, v. WILLIAM A. FOWLER AND OTHERS, RESPONDENTS.

*Acts done virtute officii — Venue — change of — when right to, absolute and not discretionary.*

An action against a public officer for acts done *virtute officii* must be brought, so far as he is concerned, in the county where the cause of action, or some part thereof, arose. It is an absolute right, and not a matter of judicial discretion, and he cannot be deprived of this statutory right by joining other parties as defendants.

The venue must first be correctly laid, and then the usual incidents of an action may occur; and a motion may be made, after issue joined, to change the place of trial, on the ground of the impossibility of obtaining an impartial trial in the county designated; but this ground is no answer to a motion before issue joined to change the venue, where the proper county has not been designated in the complaint.

APPEALS from orders made at Special Term, changing the place of trial.

The actions were both brought in the city and county of New York (in both the defendants were, some of them, public officers in the county of Kings, and the others certain contractors for what is known as the Hempstead reservoir), to recover from them certain moneys, alleged to have been obtained by such contractors by the corrupt collusion and confederation of such officers, with the said contractors.

The following is the opinion of BARRETT, J., referred to in the opinion of BRADY, J., below :

BARRETT, J. 1. The question is not whether the defendants Fowler, Lowber and Bliss were public officers within the meaning of the Constitution, but whether they were such as are contemplated by section 124 of the Code. That they were public officers in the latter sense there can be no doubt. Their duties were essentially public, and they were even required by law to take an oath of office, and to furnish bonds for the faithful performance of their duties, as permanent water and sewerage commissioners. (Laws of 1869, chap. 97, § 2.)

2. The acts complained of were clearly done by these defendants in virtue of their offices. It was wholly from such offices that they derived the authority to do what is charged against them — and that is the test. It is not a question of good or bad faith, and the proposition that the statute covers cases of neglect or inefficiency alone, is not sustained either upon principle or authority. On the contrary, it is well settled that even where, in doing an act within the limits or scope of his authority, the officer exercises such authority improperly or abuses the confidence which the law reposes in him, he is still entitled to the protection of the statute. (*Brown* v. *Smith,* 24 Barb., 419 ; *The People* v. *Hayes,* 7 How., 248; *Seely* v. *Birdsall,* 15 Johns., 268 ; *The People* v. *Tweed,* 13 Abb. [N. S.], 419, which is directly in point, and is decisive of this motion.) Even allegations of malice and " wicked combination " will not deprive a public officer of the protection of such statutes. (*Row* v. *Sherwood,* 6 Johns., 109.) And upon principle this is the just rule, for otherwise the statute would always be evaded by a mere averment of bad faith, *e. g.,* that a sheriff levied on A.'s goods under execution against B., and did it in bad faith, well knowing them to be A.'s goods.

3. In one of the cases under consideration, the cause of action arose in Kings county ; in the other, some part thereof, indeed the substantial part thereof, arose there.

4. The defendants cannot be deprived of their statutory right by joining other parties as defendants. The right is absolute, and not a matter of judicial discretion. If, therefore, a public officer be

impleaded for acts done *virtute officii*, the suit — so far as he is concerned — must be tried in the county where the cause of action, or some part thereof, arose. Any other rule would tend to nullify the statute ; for it would be as easy to join other parties defendant as to plead bad faith, and that, too, without intending to evade ; as,. for instance, to join with a sheriff defendant, the plaintiffs in the execution, who directed, or the indemnitors, who upheld the levy.

5. Lastly, we are asked to retain these cases, because it is claimed that a fair jury trial cannot be had in Kings county. But that is no answer to the motion. Issue has not been joined, and we cannot tell whether there will be a jury trial. For aught we know, the defendants may demur. The first thing to be done is to place the causes in the county where, by law, the defendants have a right to have them. When an issue of fact is there joined, it will be time enough to invoke subdivision 2 of section 126 of the Code. *Mason* v. *Brown* (6 How., 481), is not in point, for the reason that issue had there been joined ; but it is an authority for the rule that motions to change the place of trial for the convenience of witnesses can only be made after issue joined. The same principle applies to motions to change the venue, because there is reason to believe that an impartial trial cannot be had. The motion to change the place of trial to the county of Kings must be granted.

*John E. Parsons*, for the appellant.

*Roger A. Pryor*, for the respondents.

BRADY, J. :

It is necessary to add but little to the opinion of Justice BARRETT, rendered by him on deciding the motion to change the venue in these cases. Although acts of fraudulent combination are charged against the defendants to accomplish a condition of things leading to the formation of the contract ultimately made with Kingsley and Keeney, nevertheless the gravamen of the complaint begins with the conduct of the defendants while acting officially, because prior to that time the alleged scheme had not been consummated, and could not be without the contract which was made. The same observation applies to the Hempstead reservoir.

The contemplated fraud in reference thereto was not initiated

until Keeny obtained the contract alleged. It is, it may be said, wholly immaterial whether these contracts were the result of a combination antecedent to the passage of the acts of May 5, 1870, and February 18, 1871, and the action of the common council, or subsequent thereto, if characterized properly.

The defendants' responsibility for that violation of duty would be the same. The acts which form the basis of the charges presented by the complaint were committed *virtute officii*.

The defendants were acting as public officers within their official sphere, within the scope of their authority, when the contracts were made, and this, as shown by Justice BARRETT, secures to them the right given by section 124 of the Code. It is no answer to an application for the privilege accorded by this law, that the plaintiffs cannot have a fair trial in Kings county. This view, which is expressed by Justice BARRETT, is sustained by the authorities. (*Moore* v. *Gardner*, 5 How. Pr., 243; *Wood* v. *Hollister*, 3 Abb. Pr., 16, note; *Hubbard* v. *National, etc.*, 11 How. Pr., 149; *The International, etc.*, v. *Sweetland*, 14 Abb. Pr., 240; *People* v. *Tweed*, 13 Abb. [N. S.], 426.) Where the impossibility of obtaining an impartial trial is the ground of a motion to change the place of trial, it should not be made till after issue joined. (2 Wait's Pr., 630, and cases cited.) The reason of the rule relates, it is true, more to the form, perhaps, than the substance. It is that the action must be placed first in the proper county.

The starting point must, in other words, be correctly designated, and then the usual incidents of an action may occur.

When the cause is transferred to Kings county, therefore, the plaintiffs may then in turn ask for a change of the place of trial to some other county, in which there will be no prejudice from which they can suffer. The cause must be at issue then, however, which is not the case now, and the character of the issues may require serious considerations in determining the propriety of another change of the place of trial. For these reasons, we think the order appealed from must be affirmed, with ten dollars costs, and the disbursements of the appeal.

DAVIS, P. J., and DANIELS, J., concurred.

Order affirmed, with ten dollars costs and disbursements.